Mukhtorova v. Bondi

BIA
Perl, IJ
A220 232 593/594/595/596

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of July, two thousand twenty-five.

PRESENT:
> JON O. NEWMAN,
> WILLIAM J. NARDINI,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

NOZIGUL MUKHTOROVA, ALISHER
KHOLIKOV, S.I., A.I.,
> *Petitioners,*

v.                                                             **24-279**
                                                               **NAC**

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*\*

_____

\* We have used only initials to refer to the minor petitioners in this publicly

_____

FOR PETITIONERS:             Steven Haskos, Relles Law, PLLC, White Plains, NY.

FOR RESPONDENT:         Brian Boynton, Principal Deputy Assistant Attorney General; Carl McIntyre, Assistant Director; Andrew Oliveira, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioners Alisher Kholikov, his wife Nozigul Mukhtorova, and their minor children, all natives and citizens of Uzbekistan, seek review of a January 5, 2024, decision of the BIA affirming an April 17, 2023, decision of an Immigration Judge ("IJ") denying Kholikov's application for asylum and withholding of removal.[1]

---

accessible order, in accordance with Federal Rule of Civil Procedure 5.2(a)(3) and Federal Rule of Appellate Procedure 25(a)(5).

[1] We principally refer to Kholikov because his children are derivative beneficiaries and did not file independent applications, and Mukhtorova's application relied on Kholikov's allegations. Petitioners have declined to press their claim for relief under the Convention Against Torture.

*See In re Mukhtorova*, Nos. A 220 232 593/594/595/596 (B.I.A. Jan. 5, 2024), *aff'g* Nos. A 220 232 593/594/595/596 (Immigr. Ct. N.Y.C. Apr. 17, 2023). We assume the parties' familiarity with the underlying facts and procedural history.

We review the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005); *see also* Certified Administrative Record ("CAR") at 4 ("We adopt and affirm the decision of the Immigration Judge. . . . We write separately to address specific arguments raised on appeal."). We review the agency's "legal conclusions *de novo*, and its factual findings . . . under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (citation and quotation marks omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

To establish eligibility for asylum and withholding of removal, Kholikov had to show that he suffered past persecution or had a fear of future persecution and that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting [him]." 8 U.S.C. § 1158(b)(1)(B)(i); *see also id.* § 1231(b)(3)(A); 8 C.F.R. §§ 1208.13(b), 1208.16(b); *Quituizaca v. Garland*, 52 F.4th 103, 109–14 (2d Cir. 2022) (holding that

3

the "one central reason" standard applies to both asylum and withholding of removal). "To qualify as 'persecution' the conduct at issue must be attributable to the government, whether directly because engaged in by government officials, or indirectly because engaged in by private persons whom the government is 'unable or unwilling to control.'" *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (quoting *Pan v. Holder*, 777 F.3d 540, 543 (2d Cir. 2015)). "Under the unwilling-or-unable standard, a finding of persecution ordinarily requires a determination that government authorities, if they did not actually perpetrate or incite the persecution, condoned it or at least demonstrated a complete helplessness to protect the victims." *Singh v. Garland*, 11 F.4th 106, 114–15 (2d Cir. 2021) (citation and quotation marks omitted)).

Kholikov alleged as follows. He and his family experienced discrimination in business and education as ethnic Tajiks in Uzbekistan. He owned a store in a market that was, in turn, owned by a man named Umar, an influential businessman in Samarkand. When Umar decided to raze the market, Kholikov objected to vacating his store without compensation, first appealing to local authorities and prosecutors, and then lodging a complaint with the prosecutor's office in Tashkent that no one had helped him. He was then kidnapped by

4

unknown men, who demanded that he withdraw the Tashkent complaint and beat him for refusing. After Kholikov fled the area, unknown men went to his family home, repeated this demand, and threatened further harm. Kholikov believed that Umar murdered his brother for similarly objecting to an eviction, but the local police ruled the death a suicide.

Kholikov does not challenge the agency's conclusion that the discrimination alone was insufficiently severe to amount to persecution. Nor does he dispute the agency's conclusion that the kidnappers who inflicted more severe abuse were associated with Umar and his employees, not with the government. Thus, to satisfy his burden, Kholikov had to show that the government of Uzbekistan was unwilling or unable to control these private actors. *See Scarlett*, 957 F.3d at 328.

The record "does not mandate a finding by a reasonable adjudicator that the [Uzbek] government is unable or unwilling to protect" Kholikov. *Singh-Kar v. Bondi*, 137 F.4th 94, 102 (2d Cir. 2025). Kholikov argues that the agency erred in relying on his failure to report the kidnapping and beating because authorities did not act on his prior complaints. "Failure to report harm is not necessarily fatal to a claim of persecution if the applicant can demonstrate that reporting private abuse to government authorities would have been futile or dangerous."

5

*Castellanos-Ventura v. Garland*, 118 F.4th 250, 254 (2d Cir. 2024) (citation and quotation marks omitted). Here, the authorities' prior inaction did not necessarily indicate an unwillingness to protect Kholikov from violence, because his prior complaints asserted property rights that Kholikov conceded he could not document, and he never told authorities that he believed Umar killed his brother or that he feared or experienced physical abuse. Moreover, the record includes U.S. State Department reports indicating that ethnic minorities have equal legal rights in Uzbekistan, and that reports of discrimination or violence against ethnic minorities are rare. *See* CAR at 81-82. There is evidence in the record of discrimination against Tajiks in hiring and education, and of government corruption, but no evidence that the police in Uzbekistan refuse to respond to violence against Tajiks or that they lack the capacity to do so. Kholikov argues that the agency overlooked evidence of corruption in assessing the Uzbek government's willingness to intervene, but the IJ expressly acknowledged that the U.S. State Department reported some instances of government corruption, and Kholikov does not identify additional evidence that the agency overlooked or explain how such evidence would compel a conclusion that the Uzbek government would not protect him. Finally, Kholikov does not address the

6

agency's finding that the Uzbek government demonstrated its willingness to control Umar by incarcerating him for prior illegal activities.

Given Kholikov's failure to report violence, the country conditions evidence, and Umar's incarceration for other offenses, substantial evidence supports the agency's conclusion that the Uzbek government was not unwilling or unable to control Kholikov's abusers. *See Scarlett*, 957 F.3d at 328. This finding is dispositive of asylum and withholding of removal because Kholikov's fear of future persecution is premised on a continuation of the same abuses.[2] Because the above findings are dispositive, we do not reach the agency's additional findings regarding nexus to a protected ground or internal relocation. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

---

[2] Although the agency considered whether there is a pattern or practice of persecution of Tajiks in Uzbekistan, Kholikov does not argue a pattern or practice of persecution here. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (citation and quotation marks omitted)).

For the foregoing reasons, the petition for review is DENIED.   All pending

motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court